# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Sidney I. Schenkier | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 7533 | **DATE** | 1/9/2004 |
| **CASE TITLE** | Inductametals vs. Arent Fox Kintner Plotkin & Kahn | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order. Defendant's motion for summary Judgment on Counts II and III of IDM's complaint (doc.# 36) is granted. The Court directs the Clerk of the Court to enter summary judgment in favor of Arent Fox on Counts II and III of IDM's complaint.

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| ✓ | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

number of notices

JAN 1 2 2004
date docketed

docketing deputy initials

mm   courtroom deputy's initials

date mailed notice

**Document Number**

U.S. DISTRICT COURT
CLERK

Date/time received in central Clerk's Office   mailing deputy initials

FILED-ED 10

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| INDUCTAMETALS CORP., | ) | |
| | ) | |
| Plaintiff/Counter-defendant, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ARENT FOX KINTNER PLOTKIN & | ) | No. 01 C 7533 |
| KAHN, PLLC, | ) | Magistrate Judge Schenkier |
| | ) | |
| Defendant/Counter-plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| INDUCTAMETALS CORP., ACME | ) | |
| WINDOW COVERINGS, LTD., | ) | |
| INDUCTAMETALS L.P., THEODORE | ) | |
| KRENGEL AND JOSHUA KRENGEL, | ) | |
| | ) | |
| Counter-defendants | ) | |

## MEMORANDUM OPINION AND ORDER

This case involves a dispute between the plaintiff, Inductametals Corporation ("Inductametals" or "IDM") and its former legal counsel, Arent Fox Kintner Plotkin & Kahn, PLLC ("Arent Fox" or "AF"). In its complaint, Inductametals alleges three claims for relief: in Count I, Inductametals seeks a declaratory judgment that it has no further obligation to pay attorneys' fees or costs for legal services Arent Fox rendered before Inductametals terminated the relationship, and that Arent Fox is required to return certain amounts that have been paid; in Counts II and III, Inductametals asserts claims of legal malpractice, in the form of claims for breach of fiduciary duty (Count II) and breach of contract (Count III). For its part, Arent Fox has asserted a counterclaim and

third-party action, asserting various theories in aid of its effort to recover unpaid legal fees and expenses allegedly due to Arent Fox in connection with its representation of Inductametals.[1]

Arent Fox has filed a motion for partial summary judgment on Counts II and III of Inductametals' complaint (doc. #36). For the reasons stated below, Arent Fox's motion is granted.[2]

## I.

Summary judgment is proper if the record shows that there is no genuine issue as to any material fact, and that the moving parties are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue for trial exists only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249-50; *see also Flip Side Productions, Inc. v. Jam Productions, Ltd.*, 843 F.2d 1024, 1032 (7th Cir.), *cert. denied*, 488 U.S. 909 (1988). In deciding a motion for summary judgment, the Court must view all evidence in the light most favorable to the nonmoving party, *Valley Liquors, Inc. v. Renfield Importers, Ltd.*, 822 F.2d 656, 659 (7th Cir.), *cert. denied*, 484 U.S. 977 (1987), and must draw all reasonable inferences in the nonmovant's favor. *Santiago v. Lane*, 894 F.2d 218, 221 (7th Cir. 1990).

When a material fact or a set of facts yields competing, but reasonable, inferences, then there is a genuine issue that precludes summary judgment. The non-moving party's burden is to identify facts that are both material and genuinely disputed. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324

---

[1] Arent Fox also has asserted these claims in a separate action (No. 01 C 9927), which was consolidated with this case on January 15, 2002 (doc. #5).

[2] Pursuant to 28 U.S.C. § 636(c) and the consent of the parties, on November 26, 2003, the case was reassigned to this Court for all proceedings, including the entry of final judgment (doc. ## 54-59).

(1986) To be material, a fact must be outcome determinative under the substantive law governing

the motion. *Insolia v. Philip Morris Inc.,* 216 F.3d 596, 598 (7th Cir. 2000). A "genuine issue" exists

when the party opposing the motion for summary judgment serves and files, pursuant to local Rule

56.1, a concise statement outlining the material facts that require denial of summary judgment,

supported by citations to the evidentiary materials that support those denials (*e.g.,* affidavits,

depositions, answers to interrogatories, admissions etc.). Fed. R.Civ.P. 56(c). Although the party

seeking summary judgment bears the initial burden of proving that there is no genuine issue of

material fact, *Celotex,* 477 U.S. at 323, the non-moving party cannot rely upon the pleadings alone,

but must use the evidentiary tools outlined above to identify the material facts that show there is a

genuine issue for trial. *Id.* at 324; *Insolia,* 216 F.3d at 598.

## II.

We begin with the following material facts, which are not genuinely in dispute. The parties

organize the facts into two categories: the Xaloy litigation and the insurance coverage disputes. We

will adopt that structure here.

### A.    The Xaloy Litigation.

In January 2000, Xaloy Incorporated ("Xaloy") filed a patent infringement suit against IDM

in the United States District Court for the Western District of Virginia (AF's Rule 56.1 Statement

of Undisputed Material Facts (hereinafter, "AF 56.1 St.," ¶ 6). The case was assigned to Judge

James C. Turk (*Id.*). In February 2000, IDM contacted Arent Fox about representing it in connection

with the Xaloy litigation. On February 9, 2000, James H. Hulme, a partner at Arent Fox, sent IDM's

Chairman and CEO, Theodore Krengel, an engagement letter outlining the terms of Arent Fox's

proposed representation of IDM (*Id.,* ¶ 8). Although the parties dispute the precise date when Arent

3

Fox began to bill IDM for legal services, the parties agree that IDM retained Arent Fox as legal counsel in the Xaloy litigation sometime after the February 9, 2000 engagement letter was sent to IDM (*Id.*, ¶ 8).

Xaloy sought approximately $6 million in damages from IDM and an injunction against infringing sales. An adverse judgment would have effectively put IDM out of business (AF 56.1 St. ¶ 11). By no later than October 2000, IDM and Xaloy were involved in settlement discussions (*see* AF 56.1 St., Ex. 16). Settlement discussions between IDM and Xaloy continued, from time to time, until Arent Fox withdrew from its representation of IDM in June 2001 (AF 56.1 St. ¶¶ 12, 14, 15 and Exs. 16-22). At least until April 2001, IDM's point person for the settlement discussions with Xaloy was Howard Gilbert, a partner at the law firm of Wildman, Harrold, Allen & Dixon and a Director of IDM (AF 56.1 St. ¶¶ 9, 12 and Exs. 16-22). In April 2001, Arent Fox took the lead in the negotiations (AF 56.1 St., Ex. 22). However, prior to April 2001, Arent Fox knew about the settlement discussions between IDM and Xaloy (*Id.*, ¶ 12).[3]

In February 2001, IDM and Xaloy discussed a settlement involving payment by IDM to Xaloy of $500,000.00 and the parties' mutual agreement to a variety of other settlement terms (*see* AF 56.1 St., Exs. 17-18). When the parties could not reach agreement on all terms, on March 22, 2001, Xaloy informed IDM that Xaloy's settlement proposals was withdrawn (*Id.*, Ex. 19). On April 13, 2001, Xaloy sought to revive the settlement negotiations (*Id.*, at ¶ 14 and Ex. 20). At that time, Xaloy informed IDM that Xaloy would accept the terms it had proposed in February 2001, but that Xaloy had increased its monetary demand from $500,000.00 to $1 million (*Id.*) – although Xaloy

---

[3]Although the parties disagree about whether Arent Fox was "generally aware" or "fully informed" of the settlement negotiation (*compare* AF 56.1 St. ¶ 12 *and* IDM's Response to AF 56.1 St. ("IDM 56.1 Resp.") ¶ 12) , that quibble is immaterial here.

offered to allow payment to be made in installments over two years, rather than within 10 days as previously proposed (*compare* AF 56.1, Exs. 18 and 20). Between April 2001 and June 1, 2001, Mr. Hulme, an Arent Fox attorney, in consultation with Ted Krengel and Mr. Gilbert, drafted a settlement and license agreement that included the payment to Xaloy of $1 million, over time and without interest (AF 56.1 St. ¶ 15, Exs. 21-22). On May 31, 2001, Arent Fox strongly recommended to IDM that it accept the settlement terms (*Id.*, Ex. 22). IDM did not do so, and on June 1, 2001, Xaloy again withdrew its settlement proposal and discontinued negotiations (*Id.*, ¶ 15 and Ex. 23).

On or about May 31, 2000, IDM retained the law firm of Jenner & Block to replace Arent Fox as its lead counsel in the Xaloy litigation. On June 5, 2001, IDM, through Jenner & Block and IDM's new local counsel, Jones & Glenn, filed a motion for leave to substitute counsel and for continuance of the trial date (AF 56.1 St., Ex. 25). The motion for continuance stated, *inter alia*, that, while Xaloy had conducted extensive discovery, IDM, through its then-counsel Arent Fox, had not conducted "such basic discovery as taking the depositions of [Xaloy's] officers or employees, including key witnesses such as the inventors of the patent at issue who remain officers or employees of Xaloy." (AF 56.1 St., Ex. 25, ¶ 4). The motion assigned as the "apparent[]" reason for the failure to complete this discovery the parties efforts to settle the case (*Id.*, Ex. 25, ¶ 4). The motion also acknowledged that Judge Turk had continued the trial date once before, at the parties' mutual request, but asked that IDM not be punished because it "expended most of its efforts during that additional period in a good faith pursuit of an amicable settlement with Plaintiff, rather than on costly and burdensome discovery that at least initially appeared would be rendered unnecessary by a settlement, . . ." (*Id.*, Ex. 25, ¶ 8).

In the motion, IDM asked Judge Turk to continue the trial date for 45 days – to July 23, 2001 – in order to allow IDM to "fulfill its discovery obligations, complete basic discovery pertaining to plaintiff Xaloy, Inc., . . ., and prepare for a trial on the merits" (AF 56.1 St., Ex. 25, Introductory Paragraph and ¶ 6). IDM set forth in detail the discovery it planned to do in this 45-day period, including responding to outstanding discovery IDM owed to Xaloy (Id., Ex. 25, ¶ 6); deposing key Xaloy witnesses, including retained expert witnesses (Id. ¶¶ 4, 10-11); serving additional written discovery on Xaloy (Id., ¶ 12); and disclosing its own retained expert witnesses and presenting them for depositions (Id., ¶10). IDM stated that this discovery was necessary to permit IDM to present "a basic defense" (Id. ¶ 6), which IDM stated would include a "significant patent invalidity defense based on prior art" (Id., ¶7). IDM further stated that it intended to file a Request for Reexamination of Xaloy's patent with the United States Patent & Trademark Office ("PTO"). IDM also stated that during this 45-day period, it anticipated that "settlement talks will continue" (Id., ¶ 17).

In an order dated June 8, 2001 ("June 8 Order"), Judge Turk granted IDM's motion for continuance (AF 56.1 St., Ex. 27). The order stated that "[h]aving fully considered the parties' briefs, oral arguments and the relevant law, it is this Court's opinion that the trial date should be continued to allow newly substituted counsel adequate time to prepare for trial" (AF 56.1 St. ¶ 18, Ex. 27). The June 8 Order required IDM to "reimburse" Xaloy $10,000.00 "for reasonable attorney's fees and costs" (AF 56.1, Ex. 27), although the order did not state the reason for this reimbursement (IDM's rule 56.1 Statement of Additional Facts (hereinafter "IDM Add'l Facts") ¶ 2, Ex. 27). The June 8 Order did not comment on – or impose any limits on – IDM's proposed discovery program. Moreover, nothing in the June 8 Order limited IDM's right to assert, or present

evidence supporting, any potential defense to Xaloy's claims at trial; nor did that order limit IDM's right to seek leave to assert counterclaims.[4]

Judge Turk's order triggered a flurry of activity in the case. On or about June 8, 2001, Xaloy filed a renewed motion for preliminary injunction (AF 56.1 St. ¶ 19 and Ex. 28).[5] On June 19, 2001, IDM filed a 37-page brief in opposition to the motion, supported by 40 exhibits, as well as a motion for a preliminary construction of the patent claims in suit, which IDM asserted was necessary before Xaloy's preliminary injunction motion could be addressed (*Id.*, ¶19 and Exs. 29-31). Soon thereafter, Xaloy withdrew its preliminary injunction motion (*See* AF 56.1 St., Ex. 36, at 13).

IDM also pursued discovery. On June 19, 2001, IDM provided Xaloy with a supplemental discovery response (AF 56.1 St. ¶ 20 and Ex. 32). In that response, IDM – among other things -- identified four expert witnesses, as well as 17 citations to prior art that IDM claimed rendered Xaloy's patent invalid (*Id.*). IDM also served expert reports on Xaloy's counsel (*Id.*, Ex. 35). In addition, although there is no evidence that IDM served new written discovery requests on Xaloy, IDM did seek further responses to written discovery that previously had been served on Xaloy by predecessor counsel (*Id.*, Ex. 34, at 2). IDM also worked by Xaloy to schedule the depositions of seven current or former employees of Xaloy, as well as five retained experts identified by Xaloy (*Id.*, Ex. 34, at 1-2). As part of their scheduling efforts, IDM and Xaloy agreed that the trial would commence on August 13, 2001 (AF 56.1 St. ¶ 21).

---

[4] Judge Turk's two-page order refers to an accompanying Memorandum Opinion (AF 56.1 St., Ex. 27, at 2), which neither party has provided to the Court. We therefore assume that nothing in that Memorandum Opinion has any bearing on the issues before the Court on this summary judgment motion.

[5] Arent Fox's fact statement places the date of filing as June 11, 2001, but the motion – which is undated – contains a certificate of service stating that it was mailed to IDM's counsel on June 8, 2001.

The parties also revisited the subject of settlement. On June 18, 2001, IDM's counsel sent Xaloy a proposed term sheet for settlement (AF 56.1 St. ¶ 24 and Ex. 33). IDM's settlement proposal included alternative payment terms of $500,000.00 (if paid in equal installments over four years) or $250,000.00 (if paid within ten days of the signing of a settlement agreement) (*Id.*, Ex. 33, at 2). Xaloy did not respond to the proposal, and IDM thus withdrew it (AF 56.1 St. Ex. 36, at 15).

However, the parties did agree to participate in a court-mediated settlement conference with the assigned magistrate judge, which took place on July 11, 2001 (AF 56.1 St. ¶ 25). IDM submitted a mediation brief in connection with that conference (*Id.*, Ex. 36). In that brief, IDM asserted that its defenses were strong; stated that, upon establishing the invalidity of Xaloy's patent, IDM would pursue an antitrust claim against Xaloy; and explained that IDM was not willing to agree to the kind of terms it had proposed a few weeks earlier because IDM was "fully prepared to try the case in a more confident position than ever before" – even though key discovery of Xaloy had not yet been completed (*Id.*, Ex. 36 at 15).

The parties reached a settlement agreement during the court-mediated conference on July 11, 2001 (AF 56.1 St. ¶ 26 and Ex. 37 (under seal)). As a result of that settlement, the Xaloy litigation was dismissed with prejudice on September 26, 2001 (*Id.*, ¶ 26 and Ex. 38). The terms of the settlement agreement reached were more favorable to IDM than were the settlement terms negotiated between IDM and Xaloy prior to June 2001 (*Id.*, ¶ 27).[6] In deciding to settle the case, IDM's chief executive officer, Ted Krengel, knew that going to trial was an option, but made the business

---

[6]The parties dispute whether the terms of the final agreement were more favorable to IDM than were the terms set forth in the term sheet that IDM sent to Xaloy on June 18, 2001 (*Compare* AF 56.1 St. ¶ 27 *and* IDM 56.1 Resp. ¶ 27). Our review of the documents causes us to doubt Arent Fox's assertion that the final settlement was more favorable to IDM than was the June 18 proposal. In any event, the parties' dispute on that point is not material to the summary judgment issues before the Court.

judgment that the settlement being proposed was a better option than taking the risk of a trial (AF 56.1 St., Ex. 5 (T. Krengel Dep. 235-36)). But, Mr. Krengel further testified that this did not mean he thought IDM's defense was weak. To the contrary, Mr. Krengel testified that "I thought we probably would win" if IDM took the case to trial (*Id.* at 239).[7]

Although IDM said it would do so in the motion seeking a continuance, IDM did not file a request for re-examination in the PTO. Nor did IDM seek to amend its pleading to add counterclaims or third-party claims. IDM has offered no evidence that there was any order preventing it from doing so, and has not identified any specific claims that it wanted to – but could not – add. To the contrary, as explained above, IDM told the magistrate judge presiding over the settlement conference that it was planning to assert an antitrust claim if IDM prevailed on Xaloy's claims. And, the viability of that antitrust claim could not have been affected by Arent Fox's conduct, since that claim was based on conduct by Xaloy on or about May 24, 2001 – only one week before Arent Fox was replaced (AF's 56.1 Response to IDM Add'l Facts (hereinafter "AF Add'l Facts Resp.") ¶ 1, Ex. 7 (J. Krengel Dep. at 158-59)).[8]

---

[7]Although IDM complains that Arent Fox has quoted "selectively" from Ted Krengel's deposition testimony (IDM 56.1 Resp. ¶ 28), IDM does not cite other portions of that deposition to provide a different context for the testimony. Rather, IDM offers an affidavit from Mr. Krengel, in which he states that while he "hoped" IDM could prevail at trial, he settled the case because he believed that IDM was compromised in its defense by Arent Fox's "failures to represent IDM properly," which he said resulted in IDM having only a limited right to conduct discovery being unable to assert "valuable counterclaims," and having to spend another several hundred thousand dollars to defend itself (IDM Add'l Facts, Ex. B, ¶¶ 7-9). Apart from attempting to modify Ted Krengel's deposition testimony concerning his confidence in victory at trial, the affidavit fails to specify what counterclaims were lost, how IDM was compromised in its defense, or how Arent Fox's conduct added to IDM's cost of defense. For the reasons stated below, the Krengel affidavit does not create a genuine dispute of material fact for trial.

[8]IDM has submitted an affidavit from one of its Jenner & Block lawyers, stating that Arent Fox's actions or inactions had caused IDM to lose "affirmative causes of action against Xaloy" and the ability to pursue counterclaims, a fact that was "fully discussed" with the magistrate judge during the settlement conference (IDM Mem., Ex. A, ¶ 3(a), (b)). We note that the mediation brief submitted by IDM did not make those assertions. In any event, the affidavit does not set forth any specifics whatsoever about the causes of action or counterclaims allegedly lost. As we explain below, the Jenner & Block affidavit fails to create a genuine dispute of material fact for trial.

**B.     The Insurance Coverage Disputes.**

Xaloy's initial complaint, filed in January 2000, alleged only a patent infringement claim. On September 27, 2000, Judge Turk granted Xaloy leave to file an amended complaint that asserted claims for false advertising, unfair competition and deceptive trade practices (AF 56.1 St. ¶ 29).

Less than one week later, on October 3, 2000, Arent Fox provided written notice of Xaloy's new claims to IDM's insurance carrier, Chubb Group of Insurance Companies ("Chubb") (*Id.* ¶ 30, Ex. 40). Arent Fox informed Chubb that Xaloy's new claims were unrelated to and independent of its patent infringement claim (which IDM's policies excluded from coverage), and were covered as an "advertising injury" (*Id.*). Arent Fox demanded that Chubb assume payment of IDM's defense costs, and pay any "indemnity expenses" that might result from Xaloy's claim (*Id.*).

In addition to its policies with Chubb, IDM also had an insurance policy issued by Hartford Fire & Casualty Insurance Company ("Hartford") (AF 56.1 St. ¶ 31, Ex. 41). Arent Fox provided written notice to Hartford of Xaloy's false advertising, unfair competition, and deceptive trade practices claims on October 17, 2000. As with Chubb, Arent Fox demanded that Hartford assume payment of IDM's defense and provide indemnity for any judgments or other expenses resulting from Xaloy's claims (*Id.*).

On December 8, 2000, Chubb denied coverage to IDM (AF 56.1 St. ¶ 32, Ex. 43). Mr. Gilbert discussed with IDM the possibility of filing a coverage action against Chubb Insurance, but IDM decided not to do so (*Id.*, Ex. 6, Gilbert Dep. at 58-59). IDM points to no evidence indicating that Arent Fox was asked to pursue the matter further with Hartford. To the contrary, in March 2001, Arent Fox was instructed to turn the insurance files over to the Wildman firm, which would

then be handling the insurance matters; Arent Fox complied with that request (AF 56.1 St., Exs. 8 (Hulme Dep. 211-12), 55).

Hartford also denied IDM's coverage claim, and on January 10, 2001, filed a complaint against IDM seeking a declaratory judgment that it had no coverage obligations with respect to the Xaloy litigation (AF 56.1 St. ¶ 33). IDM retained Wildman Harrold to represent it in connection with Hartford's claim (*Id.*). At the request of Wildman Harrold, Arent Fox transferred its file to the Wildman firm, which assumed responsibility for IDM's representation. Shortly thereafter, Hartford and IDM reached a settlement agreement and Hartford stipulated to the dismissal of its claims with prejudice (*Id.*). The parties have not revealed to the Court the terms of that settlement. More important for purposes of this motion, IDM points to no evidence that Arent Fox was asked – or allowed – to take any role in dealing with Hartford after sending the October 17, 2000 notice letter.

In early June 2001, IDM instructed the Wildman firm to transfer all files relating to the insurance claim against Chubb to Jenner & Block (AF 56.1 St. ¶ 35 and Ex. 45). On July 12, 2001, Jenner & Block provided notice of IDM's settlement with Xaloy to Chubb, and demanded that Chubb indemnify IDM for the full settlement amount (*Id.*, Ex. 46). Chubb rejected IDM's demand, and offered to indemnify IDM for 50 percent of the settlement amount (*Id.*, Ex. 47). IDM accepted Chubb's offer, and Chubb paid the agreed-upon amount to IDM on or about August 11, 2001 (*Id.*, Ex. 48). Thereafter, in November 2001, Chubb agreed to pay a portion of the legal fees and expenses that IDM had incurred that were allocable to the "advertising injury" claims in the Xaloy litigation (*Id.* ¶ 36 and Ex. 49). On or about November 9, 2001, IDM received payment from Chubb of a total of $717,500.00, for payment of a portion of the settlement amount with Xaloy and a portion of the legal fees incurred by IDM in the Xaloy litigation (*Id.* ¶ 37, Exs. 48, 51).

Upon its entry into the case, Jenner & Block engaged in extensive activity in defending against Xaloy's preliminary injunction motion, engaging in discovery and trial preparation, and pursuing settlements with Xaloy and Chubb. Between June 1, 2001 and July 31, 2001, Jenner & Block billed IDM approximately $367,504.00 in attorneys' fees and expenses (AF 56.1 St., ¶ 37, Ex. 9).

## III.

In Counts II (breach of fiduciary duty) and III (breach of contract), IDM is essentially bringing a malpractice case against Arent Fox. As to each count, IDM alleges that Arent Fox failed to competently represent IDM by: (a) failing to provide competent advice regarding litigation options; (b) failing to pursue necessary discovery; (c) failing to comply with discovery orders and Rule 26 obligations; (d) failing to retain experts; (e) failing to investigate and assert appropriate counterclaims against Xaloy; and (f) failing to effectively pursue available insurance coverage (AF 56.1 St., Ex. 1, at ¶¶ 9, 21, 26). IDM also alleges that Arent Fox "deprived IDM of an otherwise credible defense, a strong negotiation position and valuable counterclaims" (*Id.* at ¶¶ 13-14; Ex. 2, at ¶ 5(b)). IDM claims that as a result of Arent Fox's failings, it had no other reasonable alternative but to effect a settlement of the Xaloy claims (IDM Add'l Facts, Ex. B, Krengel Aff. ¶ 8).

There is no dispute that Illinois law governs these substantive claims. Under Illinois law, an action for malpractice requires proof of the following: (a) the existence of an attorney/client relationship; (b) a duty arising from that relationship; (c) a breach of that duty on the part of defendant/counsel; (d) proximate cause; and (e) damages. *See Claire Associates v. Pontikes,* 502 N.E.2d 1186, 1190 (1st Dist. 1986). The legal issue raised by Arent Fox's motion for summary judgment is proximate cause. Damages and proximate cause cannot be presumed. *Farm Credit*

12

*Bank of St. Louis v. Gamble,* 554 N.E.2d 779, 780 (3ʳᵈ Dist. 1990). Instead, a plaintiff must plead and prove that a loss has been sustained as the result of some negligent act on the lawyer's part. *Id.*; *see also Claire,* 502 N.E.2d at 1190. The rule of proximate cause in an action for malpractice is that the "underlying action" (the case and/or the claim or defense) must no longer be viable at the time successor counsel inherits it; if the underlying action is still viable when successor counsel takes over, then the plaintiff cannot prove that the predecessor counsel's alleged failures were the proximate cause of any subsequent damages. *See Claire,* 502 N.E.2d at 1190; *Sheppard v. Krol,* 578 N.E.2d 256, 257 (1ˢᵗ Dist. 1991).

Thus, the question here is whether Arent Fox proximately cause the loss of an "underlying action" as a result of its actions and/or failures to act; or, stated differently, whether successor counsel Jenner & Block have an opportunity to remedy Arent Fox's alleged malpractice at the time that Arent Fox's representation of IDM ended (*i.e.,* May 31, 2001). The relevant time frame is the time of Arent Fox's discharge as IDM's counsel, because an attorney's duty to a client ceases upon new representation. *Land v. Greenwood,* 478 N.E.2d 1203, 1206 (4ᵗʰ Dist. 1985). There are two alleged "losses" alleged that IDM says creates a triable issue: the loss of its ability to effectively defend the case, and the loss of timely insurance coverage. We address those issues in turn.

**A.**

By June 1, 2001, the time when Jenner & Block took over the Xaloy litigation for IDM, IDM claims that Arent Fox's actions had caused it to lose: (1) unnamed "affirmative causes of action" and counterclaims; (2) the right to conduct discovery, present evidence, and assert defenses; and (3) the imposition of a $10,000.00 in sanctions, which Judge Turk ordered IDM to pay Xaloy in his June

13

8 Order (IDM Add'l Facts, Ex. A, Neumeier Aff., ¶ 3(a-c)).  Our analysis will address each of these claims separately.

### 1. Affirmative Causes of Actions and Counterclaims.

The lead difficulty with IDM's argument about lost affirmative causes of actions and counterclaims is that IDM never identifies just what affirmative causes of actions or counterclaims it allegedly lost as a result of Arent Fox's alleged malpractice.  That omission is critical because, as stated above, proximate causation and damages may not merely be presumed but must be proven. *Farm Credit Bank of St. Louis v. Gamble*, 554 N.E.2d 779, 780 (3rd Dist. 1990).  Where successor counsel had the opportunity to pursue claims that its predecessor had neglected, there is no right to pursue a malpractice action. *See, e.g., Kaminsky v. Condell Memorial Hosp.*, 816 F. Supp. 484, 488 (N.D. Ill. 1993) (Illinois law "bars a legal malpractice action where an attorney's involvement in representing his or her client had ended long enough before the running of limitations for the claim to have been timely asserted by the lawyer or lawyers who handled the case thereafter").

Our independent review of the summary judgment record discloses only one "affirmative cause of action[]" that IDM might have been contemplating:  an antitrust claim based on Xaloy's alleged communications with IDM's customers (AF 56.1 St., Ex. 36, at 14).  However, the undisputed facts undermine any assertion that this potential claim either was mishandled by Arent Fox, or that the potential claim was lost.

*First*, the alleged communications that would give rise to this antitrust claim did not occur until the last week of May 2001 (AF 56.1 St., Ex. 7, J. Krengel Dep. at 158-59) – only one week before IDM replaced Arent Fox with Jenner & Block. *Second*, there is no evidence that IDM ever informed Arent Fox of the evidence that gave rise to this claim prior to the cessation of Arent Fox's

14

representation (*Id.*, Ex. 7, J. Krengel Dep. at 159-60). *Third,* in its mediation brief in the Xaloy litigation, IDM stated that it intended to pursue the claim in a separate lawsuit, if IDM prevailed on Xaloy's patent and false advertising claims, based on a theory that Xaloy had used the Xaloy litigation and threats of patent infringement to attempt to destroy IDM (*Id.*, Ex. 36, at 14). Under prevailing law, IDM had the right to pursue such a claim in a separate lawsuit, and not as a compulsory counterclaim to Xaloy's complaint. *Mercoid v. Mid-Continent Inv. Co.*, 320 U.S. 661, 671 (1944). There is no evidence that IDM wished to use the antitrust claim as a counterclaim in the Xaloy litigation, but was denied that opportunity by the district court or as a result of any of the alleged failures of Arent Fox prior to Jenner & Block's entry into the case.

The Jenner & Block affidavit submitted by IDM fails to create a genuine dispute of material fact on this issue.[9] The affidavit contains only generalized, conclusory assertions of lost causes of actions and counterclaims; it offers no specifics. When responding to a summary judgment motion, that is not enough.

"A party seeking to defeat a motion for summary judgment is required to 'wheel out all its artillery to defeat it.'" *Caisse Nationale de Credit v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996) (citation omitted). In order to properly controvert evidence cited by the moving party, the nonmovant must cite to evidence. *Flaherty v. Gas Research Inst.*, 31 F.3d 451, 453 (7th Cir. 1994). A conclusory denial of a supported factual assertion is insufficient to create a genuine fact dispute, even when that denial is set forth in the trappings of an affidavit. *See, e.g., Lujan v. National Wild*

---

[9]Arent Fox argues, at the threshold, that this affidavit should not be considered admissible evidence based on IDM's assertion of the attorney/client privilege during the deposition of Mr. Neumeier, the affiant (Arent Fox Reply Mem. at 4-5). Arent Fox argues that IDM should not be able to shield the very information it now seeks to use to defeat summary judgment by the assertion of this privilege during discovery. We do not reach this ground on the merits, because we find that the affidavit fails to meet Rule 56's specificity requirements and, for that reason alone, fails to create a triable issue.

*Life Fed'n,* 497 U.S. 871, 888 (1990) ("the object of [Rule 56] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit"). "Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted." *Hadley v. County of DuPage,* 715 F.2d 1238, 1243 (7th Cir. 1983), *cert. denied,* 465 U.S. 1006 (1984).

The Jenner & Block affidavit fails to identify which claims should have been pursued, and fails to direct this Court to evidence that any failure by Arent Fox to pursue claims was the proximate cause of any damage to IDM. The affidavit states that Jenner & Block inherited an "extremely compromised position" (which rarely would not be the case when new counsel enters a patent case late in the proceedings), but does not provide any specifics explaining how that position was compromised or how any counterclaims or other "opportunities" were lost (IDM's Add'l Facts, Ex. A). Assertions in an affidavit must be stated as "specific concrete facts" that are "admissible in evidence," and "although 'personal knowledge' may include inferences and opinions, those inferences must be substantiated by specific facts." *See, e.g., Drake v. Minnesota Mining & Manufacturing Co.,* 134 F.3d 878, 887 (7th Cir. 1998). The Jenner & Block affidavit fails to satisfy these requirements of Rule 56 and thus fails to create a genuine issue of material fact on proximate cause with respect to the lost causes of actions or counterclaims.[10]

---

[10]The affidavit of Ted Krengel (IDM Add'l Facts, Ex. B) is equally conclusory, and thus adds nothing on this issue.

## 2. Discovery, Evidence and Defenses.

IDM claims that Arent Fox's conduct caused it to be limited in the discovery IDM could pursue, and in the evidence IDM could present (IDM Add'l Facts, Ex. A, ¶¶ 3(b)-(c)). In addition, IDM claims that its right to present defenses at trial was a risk, and that Judge Turk would allow it to do so only "if IDM's discovery responses were deemed adequate" (Id., ¶ 3(a)). At the outset, we note that the mediation brief IDM submitted to the magistrate judge in the Xaloy case does not portray a company that believed it was laboring under these obstacles. Rather, this document indicates that IDM expected to "try the case in a more confident position than ever before," and that "key Xaloy discovery to be completed in the near future." (Id., Ex. 36, at 15). IDM, through its CEO, Mr. Krengel, has testified that the settlement ultimately reached was a good business decision, despite Mr. Krengel's belief that IDM would "probably would win" if the case went to trial. (Id., Ex. 5 Krengel Dep. at 239).[11]

The only support IDM now offers for its assertions about the trial obstacles it faced is the Jenner & Block affidavit, which again is far too conclusory to create a triable issue. IDM has offered no specifics on what discovery it wished to pursue but could not. That omission is critical because it is plain that Judge Turk did not bar IDM from pursuing discovery once Jenner & Block entered the case; rather, he granted IDM's motion to continue the trial date in order to afford IDM "adequate

---

[11]In his affidavit opposing summary judgment, Mr. Krengel attempts to hedge on this deposition testimony by saying that he thought IDM "possibly could" (instead of "probably would") win at trial (IDM Add'l Facts, Ex. B, ¶ 7), as the predicate to asserting that the reason IDM settled was because its defense had been compromised by Arent Fox's alleged malpractice (Id., ¶¶ 7-9). This hedge does not create a trial issue for two reasons. First, as we explain in this opinion, IDM has failed to offer evidence to show that its likelihood of success was compromised due to the loss of claims, or limitations on defenses, discovery, or evidence IDM could present. Second, to the extent that Mr. Krengel's affidavit seeks to alter his deposition testimony, it is his deposition testimony that governs on summary judgment. Kalis v. Colgate-Palmolive Co., 231 F.3d 1049, 1055 (7th Cir. 2000), quoting Buckner v. Sam's Club, Inc., 75 F.3d 290, 292 (7th Cir. 1996) ("As a general rule, the law of this circuit does not permit a party to create an issue of fact by submitting an affidavit whose conclusions contradict prior deposition or other sworn testimony").

time to prepare for trial" (AF 56.1 St., Ex. 27). And, it is equally plain that IDM thereafter pursued

discovery: IDM supplemented its discovery responses to Xaloy, to include identification of prior

art that IDM claimed invalidated the patent and four expert witnesses IDM would use at trial; asked

Xaloy to supplement its own prior discovery responses; and, at the time settlement was reached, was

prepared to embark on a program of deposing seven current or former Xaloy employees and Xaloy's

five retained experts (*Id.*, Exs. 32, 34, 35). IDM offers no evidence to show that this discovery was

inadequate to prepare the trial defense, or how IDM's defense was compromised by the absence of

other discovery that was not taken or planned.

Likewise, IDM has offered no specifics on how it was limited in the evidence it could present

at trial. Judge Turk's order did not specifically bar IDM from presenting any evidence, and we do

not believe it can be fairly read as impliedly doing so. Judge Turk's order stated that the purpose of

continuing the trial date was to give IDM time to prepare for trial, and his order did not impose any

limits on the discovery that IDM could take. There would have been little need for a continuance

to prepare for trial, or to allow IDM to pursue the discovery outlined in its motion to continue the

trial date, if Judge Turk had intended to tie IDM's hands by preventing it from presenting evidence.

The extensive discovery that IDM thereafter pursued – and the substantial attorneys' fees and

expenses it incurred in doing so – is inconsistent with IDM's current assertion that it was limited in

the evidence it could present. IDM retained four experts, submitted expert reports, provided an

extensive listing of prior art, and was about to begin a series of depositions at the time the case

settled. There would have been no reason to incur the expense in conducting this discovery and trial

preparation if IDM did not expect it would be able to present that evidence at trial. And, in its

mediation brief, IDM stated that it expected to offer this evidence. IDM cannot create a triable issue merely by attempting to contradict that evidence with a conclusory affidavit.

Finally, as to IDM's right to present affirmative defenses, we recognize that Xaloy filed a motion to strike affirmative defenses that Judge Turk continued once Jenner & Block entered the case (AF 56.1 St., Ex. 27). Thus, the Jenner & Block affidavit correctly states that the availability of those affirmative defenses to IDM "was not yet resolved" when it entered the case (IDM Add'l Facts, Ex. A, ¶ 3(b)). However, "not yet resolved" is different from "lost." The Jenner & Block affidavit states that IDM would be allowed to assert those defenses "if IDM's discovery responses were deemed adequate" (*Id.*). Thus, IDM, through its new counsel, had an opportunity to preserve the right to assert the defenses by correcting any shortcomings in the discovery responses previously served by Arent Fox. IDM availed itself of that opportunity, and supplemented its discovery responses. IDM does not offer evidence to show that its supplementation was inadequate, or that IDM was foreclosed from making an adequate response by Arent Fox's prior actions or inactions. The undisputed material facts warrant summary judgment for Arent Fox on this issue.

### 3. The $10,000 Award.

In his June 8, Order, Judge Turk required IDM to pay Xaloy $10,000.00 as "reimbursement" of attorneys fees and costs (AF 56.1 St., Ex. 27). Judge Turk's order did not indicate what had led Xaloy to incur these expenses or why he ordered IDM to pay them.

The Jenner & Block affidavit labels this payment as a "sanction" that resulted "because of Arent Fox's failures" and resulted in a finding of "default" (IDM Add'l Facts, Ex. A, ¶ 3(b)). Mr. Krengel's affidavit repeats this assertion, stating that "IDM was sanctioned $10,000.00 as a result of Arent Fox's breaches" (*Id.*, Ex. B, ¶ 6). Arent Fox offers no evidence (by way of affidavit, or a

copy of the Memorandum Opinion that is referred to in the June 8 Order, or a transcript of the June 8 proceedings before Judge Turk) to contradict those assertions, and so we accept them for purposes of summary judgment.

However, those assertions fail to create a trial issue on the question of malpractice. Under Illinois law, a malpractice claim may lie only where the alleged breach of duty by counsel is the proximate cause for the loss of the case (or a claim or defense). *Claire*, 502 N.E.2d at 1190. As we have explained above, IDM has failed to offer evidence that could lead a reasonable jury to conclude that it lost claims or defenses, or the right to conduct discovery and present evidence to support claims or defenses, as a result of Arent Fox's conduct. We fail to see how a $10,000.00 monetary sanction constitutes the loss of a case, claim or defense, or creates a trial issue here on IDM's malpractice claim.[12]

**B.    Insurance Coverage Dispute.**

Only one question remains: is there a triable issue on IDM's claim that Arent Fox committed malpractice by failing to pursue and obtain insurance coverage? While the Krengel affidavit offers the conclusory statement that Arent Fox failed to pursue efforts to obtain insurance proceeds "in a timely manner" (IDM Add'l Facts, Ex. B, ¶ 10), IDM offers no evidence to support that conclusion.

*First,* the evidence shows that Arent Fox placed Chubb on notice of defense and coverage claims less than a week after Xaloy amended the complaint to add a false advertising claim, and placed Hartford on notice a few weeks later. IDM has offered no evidence that notice should have been provided earlier, or that there was anything inadequate about the notice that was provided.

---

[12]We express no view as to the significance of this $10,000.00 award (the parties have failed to disclose in their summary judgment papers whether the $10,000.00 sum was paid, and if so, by whom) with respect to the parties' competing claims as to IDM's obligation, if any, to pay any further amounts in attorneys' fees and expenses to Arent Fox.

*Second*, the evidence shows that once these insurers denied coverage, Arent Fox was relieved of any responsibility for dealing with the insurance issues and was not asked to take further action. When Hartford promptly filed a declaratory judgment action after denying coverage, the Wildman firm handled the matter (AF 56.1 St. ¶ 33). After Chubb denied coverage, IDM had the files transferred to the Wildman firm in March 2001 (*Id.*, Ex. 8 (Hulme Dep. 211-12), Ex. 55), which then turned the file over to Jenner & Block in June 2001 (AF 56.1 St. ¶¶ 35). Moreover, it is undisputed that when Chubb denied coverage, IDM discussed with the Wildman firm the possibility of pursuing litigation against Chubb, and decided not to do so (*Id.*, ¶ 32). IDM has offered no evidence to show why Arent Fox is accountable for delays that may have occurred in resolving the insurance matters that occurred after Arent Fox was no longer responsible for dealing with those matters.

*Third*, through the efforts of those other law firms, the insurance matters were resolved. Hartford and IDM settled the declaratory judgment action; neither party has provided evidence of the terms of that settlement or when it occurred. And, in the summer and fall of 2001, Chubb and IDM entered into agreements that resulted in IDM receiving more than $700,000 to defray the cost of the settlement with Xaloy and the attorneys' fees and expenses IDM had incurred (AF 56.1 St., Exs. 37 (under seal) 48, 51).

Because IDM offers no evidence to suggest that Arent Fox failed to pursue proceeds from insurance coverage "diligently" or in "a timely manner," IDM's assertion that it was injured by the delay in receiving insurance proceeds (IDM Add'l Facts, Ex. B, ¶ 10) is for that reason alone a non-starter. Additionally, the injury that IDM asserts – the failure to "enjoy[] the costs of defense as those costs were incurred," which allegedly "compromised IDM's negotiating position with the relevant parties" (*Id.*) – is completely unsubstantiated. There is no evidence that any of IDM's

attorneys, including Arent Fox, litigated the case differently based on the absence of such funds at an earlier stage of the litigation. We thus find Mr. Krengel's statement in his affidavit regarding lack of insurance funds for the defense is insufficient evidence on which to find a genuine question on the issue of proximate cause of malpractice.

## CONCLUSION

The Court therefore directs the Clerk of the Court to enter summary judgment in favor of Arent Fox on Counts II and III of IDM's complaint (doc. # 36).

**ENTER:**

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**Dated: January 9, 2004**